## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. _____ |
| v. | ) ) CLASS ACTION ) |
| NATIONAL COMMERCE CORPORATION, JOEL S. AROGETI, BOBBY BRADLEY, THOMAS H. COLEY, MARK L. DREW, BRIAN C. HAMILTON, R. HOLMAN HEAD, JOHN H. HOLCOMB, III, WILLIAM E. MATTHEWS, V, C. PHILLIP MCWANE, RICHARD MURRAY, IV, G. RUFFNER PAGE, JR., STEPHEN A. SEVIGNY, W. STANCIL STARNES, TEMPLE W. TUTWILER, III, and RUSSELL H. VANDEVELDE, IV, | ) JURY TRIAL DEMANDED ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on November 26, 2018 (the "Proposed Transaction"), pursuant to which National Commerce Corporation ("NCC" or the "Company") will be acquired by CenterState Bank Corporation ("CenterState").

2. On November 23, 2018, NCC's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger with CenterState (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, NCC's stockholders

will receive 1.65 shares of CenterState common stock for each share of NCC they own.

3. On January 28, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of NCC common stock.

9. Defendant NCC is a Delaware corporation and maintains its principal executive offices at 600 Luckie Drive, Suite 350, Birmingham, Alabama 35223. NCC's common stock is

traded on the NasdaqGS under the ticker symbol "NCOM." NCC is a party to the Merger Agreement.

      10.     Defendant Joel S. Arogeti is a director of NCC.

      11.     Defendant Bobby Bradley is a director of NCC.

      12.     Defendant Thomas H. Coley is a director of NCC.

      13.     Defendant Mark L. Drew is a director of NCC.

      14.     Defendant Brian C. Hamilton is a director of NCC.

      15.     Defendant R. Holman Head is a director of NCC.

      16.     Defendant John H. Holcomb, III is a director of NCC.

      17.     Defendant William E. Matthews, V is a director of NCC.

      18.     Defendant C. Phillip McWane is a director of NCC.

      19.     Defendant Richard Murray, IV is President, Chief Executive Officer, and a director of NCC.

      20.     Defendant G. Ruffner Page, Jr. is a director of NCC.

      21.     Defendant Stephen A. Sevigny is a director of NCC.

      22.     Defendant W. Stancil Starnes is a director of NCC.

      23.     Defendant Temple W. Tutwiler, III is a director of NCC.

      24.     Defendant Russell H. Vandevelde, IV is a director of NCC.

      25.     The defendants identified in paragraphs 10 through 24 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of NCC (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

27. This action is properly maintainable as a class action.

28. The Class is so numerous that joinder of all members is impracticable. As of November 23, 2018, there were approximately 20,676,731 shares of NCC common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

29. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

30. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

31. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

32. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

33. NCC is a financial holding company headquartered in Birmingham, Alabama.

34. The Company's wholly-owned subsidiary, National Bank of Commerce, provides a broad array of financial services for commercial and consumer customers through seven full-service banking offices in Alabama, twenty-five full-service banking offices in Florida, and five full-service banking offices in the Atlanta, Georgia metro area.

35. National Bank of Commerce conducts business under a number of trade names unique to its local markets, including United Legacy Bank, Reunion Bank of Florida, Private Bank of Buckhead, Private Bank of Decatur, PrivatePlus Mortgage, Patriot Bank, FirstAtlantic Bank, Premier Community Bank of Florida and First Landmark Bank.

36. Additionally, National Bank of Commerce owns a majority stake in Corporate Billing, LLC, a transaction-based finance company headquartered in Decatur, Alabama that provides factoring, invoicing, collection and accounts receivable management services to transportation companies and automotive parts and service providers throughout the United States and parts of Canada.

37. On November 23, 2018, NCC's Board caused the Company to enter into the Merger Agreement.

38. Pursuant to the terms of the Merger Agreement, NCC's stockholders will receive 1.65 shares of CenterState common stock for each share of NCC they own.

39. According to the press release announcing the Proposed Transaction:

CenterState Bank Corporation (Nasdaq-GS: CSFL) ("CenterState" or the "Company") and National Commerce Corporation (Nasdaq: NCOM) ("National Commerce"), jointly announced today the signing of a definitive agreement pursuant to which National Commerce will merge with and into CenterState in an all-stock transaction. This combination of two high-performing banks will create a leading Southeastern regional bank, with branches in Florida, Georgia and Alabama. As of September 30, 2018 and excluding purchase accounting, the combined company has pro forma total assets of $16.4 billion, gross loans of $11.5 billion, deposits of $12.8 billion and a market capitalization of approximately $3.2 billion. Over 75% of the pro forma deposit base will be in Florida.

Upon completion of the merger, Richard Murray, IV, Chairman and Chief Executive Officer of National Commerce, will join CenterState as Chief Executive Officer of the Company's wholly-owned bank subsidiary, CenterState Bank, N.A., and William E. Matthews, V, President and Chief Financial Officer of National Commerce, will join CenterState as Chief Financial Officer of both the bank and the holding company. . . .

Subject to the terms of the merger agreement, National Commerce stockholders will receive 1.65 shares of CSFL common stock for each outstanding share of National Commerce common stock. Each outstanding option to purchase shares of National Commerce common stock will be assumed by CenterState and become an option to purchase shares of CenterState common stock, with the exercise price and number of shares underlying the option adjusted to reflect the exchange ratio of 1.65. Based on CSFL's stock price of $24.25 as of November 23, 2018, this equates to a per share value of $40.01 and an aggregate transaction value of $850.4 million.

Additionally, three National Commerce directors will join both the Company board and the CenterState Bank board and one additional director will join the CenterState Bank board.

The transaction is expected to result in mid-single-digit EPS accretion on a fully phased in basis and limited tangible book value dilution, expected to be earned back in approximately two years.

The merger agreement has been unanimously approved by the board of directors of each of National Commerce and CenterState. Completion of the merger is subject to customary closing conditions, including receipt of required regulatory approvals and the approval by the stockholders of both National Commerce and CenterState.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

40. Defendants filed the Proxy Statement with the SEC in connection with the Proposed

Transaction.

41. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

42. The Proxy Statement omits material information regarding the Company's and CenterState's financial projections and the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Keefe, Bruyette & Woods, Inc. ("KBW").

43. With respect to KBW's CenterState Selected Companies Analysis, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for the companies observed by KBW in the analysis; and (ii) the earnings per share estimates for CenterState.

44. With respect to KBW's NCC Selected Companies Analysis, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for the companies observed by KBW in the analysis; and (ii) the earnings per share estimates for NCC.

45. With respect to KBW's Selected Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by KBW in the analysis.

46. With respect to KBW's Financial Impact Analysis, the Proxy Statement fails to disclose: (i) the "pro forma assumptions"; (ii) the extent to which the Proposed Transaction could be dilutive to CenterState's estimated 2019 earnings per share; (iii) the extent to which the Proposed Transaction could be accretive to CenterState's estimated 2020 earnings per share; and (iv) the extent to which the Proposed Transaction could be dilutive to CenterState's estimated tangible book value per share as of March 31, 2019.

47. With respect to KBW's CenterState Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates

7

ranging from 9.0% to 13.0%; (ii) the estimated excess cash flows for CenterState as used by KBW in the analysis and all underlying line items; (iii) CenterState's implied terminal value; and (iv) KBW's basis for applying a range of 10.0x to 14.0x estimated 2023 earnings.

48. With respect to KBW's NCC's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 10.0% to 14.0%; (ii) the estimated excess cash flows for NCC as used by KBW in the analysis and all underlying line items; (iii) NCC's implied terminal value; and (iv) KBW's basis for applying a range of 10.0x to 14.0x estimated 2023 earnings.

49. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

50. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the NCC Board of Directors and Reasons for the Merger; (iii) Opinion of Financial Advisor of NCC; and (iv) Certain Prospective Financial Estimates.

51. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and NCC

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. NCC is liable as the issuer of these statements.

54. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

55. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

56. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

57. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

58. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

59.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

60.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61.     The Individual Defendants acted as controlling persons of NCC within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of NCC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

62.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

64. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

65. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  February 25, 2019                                      **RIGRODSKY & LONG, P.A.**

                                                               By:  */s/ Gina M. Serra*
                                                                    Brian D. Long (#4347)
**OF COUNSEL:**                                                     Gina M. Serra (#5387)
                                                                    300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**                                                    Wilmington, DE 19801
Richard A. Maniskas                                                 Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300                                     Facsimile: (302) 654-7530
Berwyn, PA 19312                                                    Email: bdl@rl-legal.com
Telephone: (484) 324-6800                                           Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com                                              *Attorneys for Plaintiff*